IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL SNOWDEN,

Petitioner,

vs.

DAVE DAVEY, Acting Warden, California State Prison-Corcoran,[1]

Respondent.

No. 2:11-cv-01039-JKS

MEMORANDUM DECISION

Daniel Snowden, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Snowden is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at California State Prison-Corcoran. Respondent has answered, and Snowden has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On January 5, 2007, Snowden was charged with one count of kidnapping, one count of kidnapping with the intent to commit rape, two counts of forcible rape, two counts of forcible sexual penetration, two counts of sexual battery, one count of forcible oral copulation, one count of false imprisonment, one count of robbery, and one count of assault with a deadly weapon or by means of force. The information further alleged numerous enhancements with regard to the offenses. On direct appeal of his conviction, the California Court of Appeal recounted the following facts underlying the indictment:

---

[1] Dave Davey, Acting Warden, California State Prison-Corcoran, is substituted for Derral G. Adams, former Warden, California State Prison-Corcoran. FED. R. CIV. P. 25(d).

In September 2003, T.P., recently kicked out of her group home for turning 18, went to Sacramento with two other women to work as a prostitute. She started in the Stockton Boulevard area and wound up at a local bar. T.P. went to the bar's parking lot, where she noticed [Snowden], who asked her to come over.

T.P. went to the car and talked to [Snowden] for about five minutes, but did not intend to solicit him for prostitution. [Snowden] sounded "kind of nerdy at first," but his demeanor changed: he got violent, pulled out a little silver semiautomatic gun, and told T.P. to get in the car. T.P. complied and [Snowden] drove off with her.

[Snowden] soon grabbed T.P.'s neck, pushed her head down, and forced her to perform oral sex on him while he drove. When she resisted, [Snowden] told T.P. he would cut her open and leave her body by the trash cans.

T.P. testified [Snowden] forced her to orally copulate him again after the car stopped. [Snowden] moved T.P.'s seat back and he got on top of her. He then took off her shirt, fondled and kissed her, and then raped her.

[Snowden] kept telling T.P. he was her new pimp now, calling himself Pimping Brady or Pimping Breezy. After finishing, [Snowden] started to drive, finally letting her off at a West Sacramento hotel parking lot, where he told T.P. to make $500 for him as a prostitute.

As T.P. called 911 from a pay phone at a gas station, [Snowden's] car pulled in. He got out of the car, asked T.P. who she was calling, punched her in the stomach, and slapped her in the face before driving off.

T.P.'s sexual assault examination did not rule out consensual sex or sexual assault.

C.R. testified under immunity. In November 2003, she was homeless and working as a prostitute. She was on Stockton Boulevard walking to a friend's house after midnight, not intending to solicit prostitution, but open to offers if propositioned. [Snowden] pulled over in his car and propositioned C.R., who accepted the offer and took $30 from him. C.R. got in and performed oral sex on [Snowden] as he drove to a nearby hamburger restaurant. When they got to the parking lot, [Snowden] asked C.R. for intercourse without a condom, which she refused.

[Snowden], who called himself Brazy, quickly changed his demeanor and took a gun from the arm rest. Pointing the revolver at C.R.'s face, [Snowden] told her to disrobe. He then fondled C.R., lifted her skirt up, jumped over to the passenger seat, and raped her. C.R. subsequently testified she did not remember whether she performed oral sex on [Snowden].

Seeing [Snowden's] gun, C.R. was afraid to jump out of the car and leave after the rape. [Snowden] continued driving, and at some point ordered C.R. to leave. As the car slowed down for a traffic light, C.R. decided to grab [Snowden's] cell phone and jump out.

C.R. ran down the middle of the street and called 911 while [Snowden] chased her in his car. Approaching a convenience store, she heard sirens, and [Snowden] then drove off.

> C.R. admitted she had told the officer, the 911 dispatcher, and the nurse conducting her medical exam that she had been forced into the car at gunpoint. She did so because of her past; C.R. wanted the authorities to take her report seriously.
>
> The first responding officer took C.R.'s statement. C.R., who cried so much that she could barely speak, said her assailant pulled a gun on her, forced her into his car, and compelled her to perform oral sex on him. When the assailant got to the parking lot, he forced her to have unprotected intercourse with him. The assailant, who called himself Brazy, held a gun the entire time.
>
> [Snowden's] DNA was found in swabs taken from both victims. Both T.P. and C.R. identified [Snowden] as their assailant in photographic lineups.

*People v. Snowden*, No. C058667, 2009 WL 3165445, at *1-2 (Cal. Ct. App. Oct. 2, 2009).

On December 5, 2007, Snowden waived his right to a jury trial and a bench trial commenced. On January 18, 2008, the court found Snowden guilty of one count of kidnapping with the intent to commit rape, two counts of forcible rape, one count of false imprisonment, and one count of assault and found true the enhancements and alternate penalty provisions alleged on each count. On March 14, 2008, the court sentenced Snowden to an aggregate imprisonment term of 13 years plus a consecutive term of 50 years to life.

Through counsel, Snowden appealed his conviction, arguing that: 1) he did not make a knowing waiver of his right to a jury trial; 2) the evidence was insufficient to support the false imprisonment conviction; 3) false imprisonment is a lesser included offense of rape and thus the convictions for both rape and false imprisonment violated the protections against double jeopardy; 4) the trial court erroneously imposed consecutive life terms; 5) the life term imposed for the kidnapping conviction should be vacated because the trial court used the kidnapping to impose a life term for the rape conviction. The Court of Appeal corrected the abstract of judgment to reflect that the sentence imposed on the kidnapping with the intent to commit rape conviction was stayed but otherwise affirmed Snowden's conviction in a reasoned, unpublished

decision. *Snowden*, 2009 WL 3165445, at *7. Snowden then petitioned for review in the California Supreme Court, raising his claims that he did not knowingly waive his right to a jury trial, the evidence was insufficient to support the false imprisonment conviction, and that his rape and false imprisonment convictions violated double jeopardy. The state supreme court summarily denied the petition on December 17, 2009.

Snowden filed his first petition for a writ of habeas corpus in this Court on January 19, 2010. *Snowden v. Adams*, No. 10-cv-00651-KJM-GGH, Docket No. 1 at 12. On June 15, 2010, Respondent moved to dismiss Snowden's petition on the ground that one of the four claims asserted in the petition had not been presented to the California Supreme Court and was thus unexhausted. *Id.* at Docket No. 14.

On February 7, 2011, while Respondent's motion to dismiss was pending, Snowden filed a petition for a writ of habeas corpus in state superior court, in which he claimed: 1) the court struck a ten-year enhancement but sentenced him to it anyway; 2) his assault with a deadly weapon conviction should be reduced to the lesser offense of simple batter; 3) immunity was improperly granted for C.R.; and 4) he received ineffective assistance of counsel. On March 29, 2011, the superior court denied the petition in a reasoned opinion.

On March 31, 2011, this Court granted Respondent's motion to dismiss in *Snowden v. Adams*, No. 10-cv-00651-KJM-GGH, and dismissed the case without prejudice. *Snowden v. Adams*, No. 10-cv-00651-KJM-GGH, Docket No. 24.

Snowden timely filed the instant Petition for a Writ of Habeas Corpus to this Court on April 5, 2011.

On May 2, 2011, Snowden filed an additional petition for a writ of habeas corpus in the state appellate court, raising the same claims he raised in his February 7, 2011, petition to the state superior court. The Court of Appeal denied the petition without comment on May 12, 2011.

## II. GROUNDS/CLAIMS

In his *pro se* Petition, Snowden asserts three grounds for relief. First, Snowden argues that his jury trial waiver was invalid because it was not knowingly made and was "based on a promise of benefit." He next contends that the false imprisonment conviction must be reversed as a lesser included offense of forcible rape. Finally, Snowden claims that there was insufficient evidence to sustain his false imprisonment conviction.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision." *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

Claim One: Invalid Jury Trial Waiver

Snowden first argues that his waiver "was not knowingly made" and "invalid because it was based on a promise of benefit." Snowden asserts that "any inducement offered by the trial court to a defendant to persuade him to waive his fundamental right to a jury trial violates [the] defendant's right to due process of law. Even when there's no outward negotiation, offers of benefit in exchange for a waiver creates substantial danger of unintentional coercion."

When Snowden waived his right to a jury trial, the court and the parties were having the following discussion about motions in limine:

| | |
|---|---|
| THE COURT: | We are meeting. Mr. Snowden is present with his attorney, Mr. Rosenfeld. And Mr. Asker here for the People.<br>So we are here on these motions in limine this morning. We talked yesterday about [the] possibility of doing this as a court trial rather than a jury trial, and that decision will have some bearing on these motions.<br>Have you had a chance to discuss that with Mr. Snowden, Mr. Rosenfeld? |
| MR. ROSENFELD: | Yes, Your Honor. I have. |
| THE COURT: | What do you think. |
| MR. ROSENFELD: | If I may allow Mr. Snowden to speak. |
| THE COURT: | Mr. Snowden. |
| [SNOWDEN:] | Yes, Sir. I think it would be—it would be good. |
| THE COURT: | You do want to do a court trial? |
| [SNOWDEN:] | Yeah, yes, sir. |
| THE COURT: | All right. All right. Let me advise you that you—whenever the Government charges you with a crime, they have to prove beyond a reasonable doubt, and you have a number of rights that apply in that situation.<br>I am going to advise you what all those rights are. You are going to have all those rights intact when you are trying the case to me, just the same as you would with a jury.<br>The only difference is going to be that I will be the finder of the facts instead of the jury, okay. So all the rights that you have are, the right to a jury trial, the right to see and hear witnesses testify |

under oath, and have your attorney question them, the right to remain silent, not incriminate yourself, and the right to testify, to present a defense, and use the court's subpoena power to bring evidence and witnesses to court.

Do you understand all those rights?

[SNOWDEN:] Yes, sir.

THE COURT: And do you waive your right to a jury trial so that the case will be tried to the court, and the court will be the finder of fact?

[SNOWDEN:] Yes, sir.

THE COURT: All right. Mr. Rosenfeld, do you join in the waiver?

MR. ROSENFELD: I do, Your Honor. He was fully advised of the advantages and disadvantages, fully advised of the strategy reasons for and against, and he has made a decision that I will join in with. Yes, Your Honor.

THE COURT: Mr. Asker, what about you, you join in the waiver?

MR. ASKER: People join.

THE COURT: All right. Well, this is going to make some of our motions in limine a little easier.

On direct appeal, Snowden argued that his wavier was not knowingly made because he "was confused about the nature and consequences of the jury waiver." He additionally argued that the waiver was based on a promise of benefit because "[t]he trial court intimated that its ruling on the in limine motions would be more favorable to [Snowden] if he waived jury." The appellate court rejected these contentions. It first found that Snowden "clearly and unequivocally expressed his desire to waive his right to a jury and trial counsel agreed with his decision" which established that Snowden's waiver was knowing. *Snowden*, 2009 WL 3165445, at *4. It further concluded:

> When [Snowden] gave his waiver the court was considering in limine motions by both parties addressing [Snowden's] criminal history, the admissibility of the 911 tape, the victims' criminal and sexual history, [Snowden's] statement to law enforcement, and his in-custody status when he gave the statement. The court's statements were no more than commonsense observations that a jury trial waiver would simplify some of its rulings on the pending motions. No reasonable person would take the court's statements to imply a promise of some benefit if [Snowden] waived his right to a jury trial.

*Id.*

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . an impartial jury of the State and district where in the crime shall have been committed." U.S. CONST. amend. VI. But a criminal defendant may waive his right to trial by jury so long as the waiver is made knowingly and voluntarily. *See Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938). Such a waiver occurs where the defendant understands the significance of the decision and makes the decision free from coercion. *See Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993); *Adams v. Peterson*, 968 F.2d 835, 837 n.1, 843-44 (9th Cir. 1992) (en banc).

Snowden's claim that his waiver was not knowingly made is belied by the record. The record indicates that both defense counsel and the court explained the consequences of a waiver to Snowden and that Snowden voluntarily waived his right to a jury trial. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (citing *Machibroda v. United States*, 368 U.S. 487, 495-96 (1962)). Snowden's claim that his waiver was improperly induced by the trial court is also contradicted by the record, which, as the appellate court found, reflects that the trial court's statements "were no more than commonsense observations that a jury trial waiver would simplify some of its rulings on the pending motions." *Snowden*, 2009 WL 3165445, at *4. The state court's determination neither contravened or unreasonably applied federal law. Accordingly, Snowden is not entitled to relief on his jury waiver claim.

Claim Two: Double Jeopardy Violation

Snowden next contends that his convictions for both false imprisonment and forcible rape violate the protection against double jeopardy. According to Snowden, false imprisonment is a lesser included offense of forcible rape.

The Double Jeopardy Clause of the Constitution provides that no person shall "be subject for the same offen[s]e to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The clause is enforced against the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 787 (1969). The Supreme Court has previously held that this clause protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *Monge v. California*, 524 U.S. 721, 727-28 (1998) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not . . . ." *Brown v. Ohio*, 432 U.S. 161, 166 (1977) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Brown*, 432 U.S. at 166 (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n. 17 (1975)). As the Court of Appeal concluded on direct review of Snowden's conviction:

> [F]alse imprisonment is not a lesser included offense within the crime of rape. Forcible rape is sexual penetration, however slight, accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person of another. ([California Penal Code] §§ 261, subd.(a)(2), 263.) Forcible false imprisonment is the unlawful violation of the personal liberty of

> another effected by violence, menace, fraud, or deceit. (§§ 236, 237, subd.(a).) A person can be raped in a place where she has chosen to be and wishes to remain. A person can be raped in a place from which she cannot leave, such as in cases of lawful custody in jail or in a hospital. A person can be raped in a place from which she lacks the capacity to leave, such as in cases of an invalid or a person who has already been unlawfully restrained by another. False imprisonment may often accompany rape, but it is not essential to the offense and thus is not a lesser included offense for purposes of the rule advanced by [Snowden].

*Snowden*, 2009 WL 3165445, at *5.

Thus, the two convictions do not violate the "same elements" test of *Blockburger*, 284 U.S. at 304, and Snowden is not entitled to relief on this ground either.

Claim Three: Insufficiency of the Evidence

Finally, Snowden claims that there was insufficient evidence to support his conviction for false imprisonment. In support of this claim, Snowden alleges that the victim "got into [his] car voluntarily and accompanied [him] to a secluded area after she agreed to have sex with [him] for $30.00[.] During the drive she performed oral sex on [him], voluntarily. [She] was never unlawfully restrained, confined or detained[] against her will."

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the

evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted). It is through this lens that this Court must view an insufficiency of the evidence claim.

In this case, Snowden's arguments with regard to his legally insufficiency of the evidence claim are nothing more than an attack on the testimony of the victim. But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *Schlup v. Delo*, 513 U.S 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup*, 513 U.S. at 330. In this case, the victim testified that she got into Snowden's car voluntarily after agreeing to engage in an act of prostitution. She also testified that, after she refused to have sex with him without a condom, Snowden became angry and violent, pointed a revolver at her, and demanded that she have sex with him. She further testified that, after he raped her, Snowden started driving away with the victim. The court found that "her testimony was credible about being kept in that car against her will [and] [a]lso credible about being moved from one place to another."

Contrary to Snowden's assertion, the fact that the court's credibility assessments were not in his favor does not amount to a constitutional violation. Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Snowden bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have found proof that Snowden was guilty of false imprisonment, especially considering the double deference owed under *Jackson* and AEDPA. Snowden is therefore not entitled to relief on this claim.

## V. CONCLUSION AND ORDER

Snowden is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated:  May 30, 2014.

                                                                   /s/James K. Singleton, Jr.
                                                                  JAMES K. SINGLETON, JR.
                                                                Senior United States District Judge